# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:11-cv-00172-RLV-DSC

| | |
|---|---|
| WINTHROP RESOURCES CORPORATION, | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) **MEMORANDUM AND ORDER** |
| COMMSCOPE, INC. OF NORTH CAROLINA, | ) |
| Defendant/Counter-Claimant. | ) |

**THIS MATTER** is before the Court upon Winthrop Resources Corporation's Motion to Dismiss CommScope, Inc. of North Carolina's First Amended Counterclaims III, IV, and V, filed February 27, 2012. (Doc. 19.) Defendant/Counter-Claimant CommScope filed its Memorandum in Opposition on March 15, 2012 (Doc. 20), to which Plaintiff/Counter-Defendant Winthrop filed a reply on March 26, 2012 (Doc. 21).

## I. NATURE OF THE CASE

This civil case commenced on December 1, 2011, upon the filing of Winthrop's Complaint in the United States District Court for the Western District of North Carolina seeking a declaratory judgment pursuant to 28 U. S. C. §§ 2201 and 2202. Jurisdiction is proper pursuant to 28 U. S. C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391(b).

Winthrop is a corporation organized under the laws of the State of Minnesota, with its principal place of business located in Minnesota. (Doc. 1 ¶ 7.) CommScope is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located in North Carolina. (Doc. 1 ¶ 8.)

On or about January 28, 2008, Winthrop and CommScope entered into a contract under

1

which Winthrop acquired substantial computer equipment, software and related items selected by CommScope, and then leased the equipment, software and related items to CommScope. (Doc. 1 ¶ 10; Doc. 18 at 3.) The operative Lease Schedule[1] structured the payment plan as follows:

> Term of Lease from Commencement Date: 36 months
> Monthly Lease Charge: January–September 2008: $0.00; Thereafter: $200,763.00
> Anticipated Delivery and Installation: February–September 2008
> . . .
> The monthly lease charge on this Lease Schedule Number 001[R][2] is based on Lessee leasing $5,052,323.85 in Equipment cost. Lessee agrees to lease from Lessor new Equipment with an acquisition cost of not less than $5,052,323.85, of which at least $447,232.34 shall be Hardware. The Monthly Lease Charge will be prorated and charged as interim rent between the date an item of equipment is accepted and the Commencement Date.

(Doc. 1-7 at 2; Doc. 18-1 at 12.) The Contract itself stipulated when the term for any Lease Schedule would commence:

> This lease Agreement is effective from the date it is executed by both parties. The term of this Lease Agreement, as to all Equipment designated on any particular Lease Schedule, shall commence on the Installation Date for all Equipment on such Lease Schedule and shall continue for an initial period ending that number of months from the Commencement Date as set forth in such Lease Schedule (the "Initial Term") and shall continue for successive periods of one (1) calendar month each ("Renewal Term").

(Doc. 1-1 at 2; Doc. 18-1 at 2.) Also notable is the contract's language regarding payment of taxes:

> In addition to the Lease Charges set forth in Section 3, the Lessee shall reimburse Lessor for all license or registration fees, assessments, sales and use taxes, rental taxes, recycling, administrative or environmental fees, gross receipts taxes, personal property taxes and other taxes or fees now or hereafter imposed by any

---

[1] The parties agreed to Lease Schedule No. 001 on January 30, 2008, and included the following terms:
Term of Lease from Commencement Date: 36 months
Monthly Lease Charge: January–September 2008: $0.00 per month; Thereafter: $190,883.00 per month
Anticipated Delivery and Installation: January–February 2008
Lease Schedule No. 001R was agreed to on October 15, 2008, and specifically states, "This Lease Schedule No. 001R replaces Lease Schedule No. 001." Thus, Lease Schedule No. 001R is the operative Lease Schedule in this dispute. (Docs. 1-2, 1-7; Doc. 18-1 at 10, 12.)

[2] Omission of the "R" in this instance appears to be mere typographical error. When compared with Lease No. 001, it is clear that the payment amounts in question differ, reflecting the increased allotment of included equipment, which formed the basis of the Lease Schedule revision.

2

> government, agency, province or otherwise upon the Equipment, the Lease Charges or upon the ownership, leasing, renting, purchase, possession, use, recycling or disposal of the Equipment, whether the same be assessed to Lessor or Lessee (the "Taxes"). Lessor shall file all property tax returns and pay all Taxes when due.

(Doc. 1-1 at 3; Doc. 18-1 at 3.) Finally, the parties stipulated that their agreement "shall be governed by the internal laws (as opposed to conflicts of law provisions) and decisions of the State of Minnesota." (Doc. 1-1 ¶ 25; Doc. 18-1 at 7.)

Winthrop claims that CommScope was obligated make thirty-six monthly payments of this specified amount from October, 2008, through September, 2011. (Doc. 1 ¶ 16.) CommScope made thirty-five of the monthly lease payments until, on August 25, 2011, it notified Winthrop via letter that it was only required to make twenty-seven payments, at which time it demanded a refund for, what it deemed to be, eight months of overpayments. (Doc. 1 ¶ 18; Doc. 18 at 6.) In responding to CommScope via long-distance discussions and an in-person meeting at CommScope's North Carolina office in November, 2011, Winthrop maintained that CommScope was required to make thirty-six total monthly payments. (Doc. 1 ¶¶ 19–21.)

Winthrop filed its Complaint on December 1, 2011, asserting its entitlement to a judgment declaring CommScope liable for thirty-six total monthly payments and all costs, including attorneys' fees, Winthrop incurred in conducting this lawsuit. (Doc. 1 ¶¶ 15–27.) CommScope's First Amended Answer asserted five counterclaims. (Doc. 18.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Winthrop has moved to dismiss counterclaims III (Unjust Enrichment), IV (Violation of North Carolina's Unfair and Deceptive Trade Policies Act), and V (Violation of Minnesota's Deceptive Trade Practices Act).

II. STANDARD OF REVIEW

A motion filed per Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan*

*v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), measured by whether it meets the standards stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted), *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To have facial plausibility—a standard that lies between the outer boundaries of a probability requirement and the mere possibility of unlawful conduct—the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

### III. DISCUSSION

A. Unjust Enrichment

CommScope claims that, as a result of the disagreement regarding the required number of payments, it paid to Winthrop millions of dollars in excess of the principal value of the software and hardware, any sales taxes thereon, and a reasonable, market rate charged by Winthrop to

4

finance acquisition of the software and lease of the software. (Doc. 18 ¶ 84.) Thus, CommScope claims, Winthrop was unjustly enriched by accepting the payments. (*Id.*) Winthrop responds by asserting that CommScope concedes the presence of a valid contract between the two. (Doc. 19 at 7.) Further, as Winthrop argues, "Minnesota does not allow recovery under an unjust enrichment theory when there is an express contract which governs the parties' relations." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 n.4 (8th Cir. 1997) (citing *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1987)).

The pleadings evince both parties' understanding of the existence of a contract. CommScope "admit[ted] that on or about January 28, 2008, it and Winthrop entered into a contract . . . referred to . . . as 'Lease Agreement No. CO012808.'" (Doc. 18 at 3.) CommScope further states that "[t]he Lease represents a valid contract between CommScope and Winthrop." (Doc. 18 at 31.)

"It is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law." *Bartholomew v. Avalon Capital Grp., Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (quoting *Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)); *accord Hoy v. Niemela*, No. A12-1806, 2013 WL 2926975, at *6 (Minn. Ct. App. June 17, 2013) ("There is no dispute that there was a valid contract between the parties in the form of the purchase agreement. [The plaintiff]'s breach-of-contract claim is evidence of such. [The plaintiff] has an adequate remedy available at law (her breach-of-contract remedy), so she may not also pursue equitable relief . . . ."). Here, while the parties dispute their respective duties under the contract, neither denies its existence. Thus, the possibility of legal remedy for CommScope based on its breach-of-contract claim(s) precludes recovery based on equitable theories.

Further, CommScope cannot plausibly plead unjust enrichment in the alternative where the claim lacks sufficiency on its own. As established above, Minnesota law prohibits recovery under a theory of unjust enrichment in disputes governed by express contracts. Thus, regardless of the outcome of CommScope's breach-of-contract counterclaims, the existence of the contract precludes recovery under an unjust-enrichment theory.

B. North Carolina Unfair and Deceptive Trade Practices

Defendant's counterclaim for unjust enrichment having been dismissed, the transaction at issue is governed by the law of the State of Minnesota.[3] Because Defendant's claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") has no application to Minnesotan transactions, it shall also be dismissed.

---

[3] The conflict of laws rules to be applied by this Court, which sits in diversity, must conform to those prevailing in North Carolina, the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this state, the "traditional conflict of laws rule is that matters affecting the substantive rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." *Wachs Technical Servs., Ltd. v. Praxair Distribution, Inc.*, No. 11–633, 2012 WL 945215, at *2 (N.C. Ct. App. Mar. 20, 2012) (quoting *Boudreau v. Baughman*, 368 S.E.2d 849, 853–54 (N.C. 1988)). Therefore, with regard to Defendant's counterclaims rooted in breach of contract, under North Carolina law, a choice-of-law provision to which contracting parties have agreed will be enforced. *Tanglewood Land Co. v. Byrd*, 261 S.E.2d 655, 656 (N.C. 1980) (requiring further, should the validity of such a provision be put into question, that "questions of contract construction and interpretation [be] governed by the law of the state where the contract was made"). Here, the contract is "[to] be governed by the internal laws (as opposed to conflicts of law provisions) and decisions of[] the State of Minnesota." (Doc. 1-1 at 7.)

With regard to Defendant's UTDPA counterclaim, North Carolina courts apply the law of the state having the most significant relationship to the occurrence giving rise to an action involving unfair or deceptive trade practices. *Andrew Jackson Sales v. Bi-Lo Stores, Inc.*, 314 S.E.2d 797, 799 (N.C. Ct. App. 1984). Applying this rule to the facts of the instant case, the law of Minnesota governs this action. Defendant alleges as unfair or deceptive that Winthrop "cold-called" promising competitive interest rates with no intention to perform; charged it a substantially higher interest rate than promised; structured the transaction to attempt to secretly eliminate the promised free months, thus concealing its intent to delay lease start until all hardware had been delivered; systematically destroyed its internal records; wrongfully collected sales tax at a rate higher than that charged in North Carolina; submitted multiple false invoices to CommScope's personnel for lease payments and taxes; made false statements to CommScope's personnel about the validity of the invoices when questioned by accounting personnel; and failed to remedy the tax over-payment issue. (Doc. 18 ¶¶ 89–92.) These allegations contemplate Winthrop having made false misrepresentations via telephone from its place of business in Minnesota; having transmitted false or inaccurate documents, including invoices, from this place of business; having destroyed, in concealment, materials at this place of business; or having falsely and knowingly accepted overpayment sent to this place of business. The Court notes in passing that resolution of this question is of no practical import as the disposition of the case would be the same under North Carolina law.

C. Minnesota Deceptive Trade Practices

In the alternative to its claimed violation of the North Carolina Unfair and Deceptive Trade Practices Act, CommScope asserts a violation of Minnesota's Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43–325D.48, which likewise mirrors certain aspects of the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, on deceptive trade acts or practices. Under this statute, a person engages in a deceptive trade practice when

> in the course of business, vocation, or occupation, the person: . . . represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have . . . [or] advertises goods or services with intent not to sell them as advertised . . . [or] makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions . . . [or] engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325D.44(1).

Specifically, CommScope alleges that Winthrop systematically and fraudulently overcharged under the Lease for thirty-six monthly payments when the Lease required only twenty-seven monthly monetary payments, made fraudulent representations regarding the amount owed under the Lease, and wrongly collected amounts for taxes which it had no authority to collect. (Doc. 18 ¶¶ 96–98.)

In Minnesota and elsewhere, a breach of contract, even if done in bad faith, is not a tort. *Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975). Rather, "a party is not entitled to recover [in ]tort . . . for a breach of contract, absent an 'exceptional case' where the breach of contract constitutes or is accompanied by an independent tort." *Cherne Contracting Corp. v. Wausau Ins. Co.*, 572 N.W.2d 339, 343 (Minn. Ct. App. 1991) (quoting *Wild*, 234 N.W.2d at 779–80); *cf. Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) (addressing North Carolina law). A tort is independent from a breach of contract if "a

7

relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." *Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992). CommScope's statutory tort claim is thus actionable only if the alleged misrepresentations upon which it is based were outside of or collateral to the contract.

Here, obligations relating to the payment schedule are not independent of the contract promise. With regard to Winthrop's interest-rate-related representations allegedly made during the cold calls preceding the formation of the contract, such representations sufficiently regard the terms of the Lease Agreement such that the contract itself staves off the likelihood of deception or misunderstanding stemming from these representations for MDTPA purposes.[4]

Further, Winthrop's pleadings regarding alleged, post-formation communications encouraging CommScope to wait for hardware deliveries, which allegedly resulted in a delayed "Commencement Date" and overpayment, do not meet the particularity requirement of Federal Rule of Civil Procedure 9(b). The Rule states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Federal courts applying Minnesota law have clarified that claims brought pursuant to Minn. Stat. § 325D.44 must be pleaded with such particularity. *See, e.g.*, *Coyne's & Co., Inc. v. Enesco, LLC*, 565 F. Supp. 2d 1027, 1044 (D. Minn. 2008) (quoting *Masterson Personnel, Inc. v. The McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at *5 (D. Minn. Nov. 22, 2005)); *cf. Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (applying Rule 9(b) not only to claims asserting common-law fraud, but to all allegations having the "substance of fraud"). In order to meet this pleading requirement, a plaintiff must allege the "who, what, when, where and how" for each claim. *U.S.*

---

[4] Ultimately, rather than describing the lease charges in terms of principal and interest, the Lease Schedule set forth rent as a flat, monthly fee and prorated interim rent based on this flat, monthly fee. (*See* Doc. 18-1 at 12.)

*ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

Here, CommScope has inadequately pleaded Winthrop's post-formation encouragement to wait for additional deliveries as "deceptive" under section 325D.44. CommScope has specifically pleaded that it was "encourage[ed] … to wait for hardware deliveries under CommScope's normal purchasing process, even though such delay resulted in overpayment of over $2,000,000." (Doc. 18 at 36.) CommScope elsewhere alleges that "[a]t no time did Winthrop indicate that this normal purchasing process would result in a complete change in the promised competitive market rate for the overall transaction" (Doc. 18 at 25) and that "Winthrop never disclosed to CommScope that the relatively small amount of hardware added to the transaction at Winthrop's request would result in a dramatic increase in cost for the entire transaction if CommScope followed its normal purchasing process" (Doc. 18 at 30). Winthrop has not pleaded the "who, what, when, where and how" in articulating its claim of deceptive acts or practices.

Having established that Winthrop's alleged misrepresentations were either not sufficiently independent of the underlying contract or not pleaded with sufficient particularity to satisfy the requirements under Rule 9(b), this dispute will be decided by contract law.

## IV. ORDER

For all of these reasons, with regards to counterclaims III, IV, and V, Defendant's First Amended Counterclaim fails to state any claim upon which relief may be granted.

**IT IS, THEREFORE, ORDERED** that Plaintiff/Counter-Defendant's Motion to Dismiss Counterclaims III (Unjust Enrichment), IV (North Carolina Unfair and Deceptive Trade Practices), and V (Minnesota Deceptive Trade Practices) be **GRANTED**. (Doc. 19.)

Signed: July 31, 2013

Richard L. Voorhees
United States District Judge