IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:11-CV-172

| | |
|---|---|
| WINTHROP RESOURCES CORPORATION, | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) **ORDER** ) |
| COMMSCOPE, INC. OF NORTH CAROLINA, | ) ) ) |
| **Defendants.** | ) ) ) |

Before the Court is Commscope, Inc. of North Carolina's ("Commscope") Objection to Magistrate Judge's Order Granting Plaintiff's Motion to Compel. (Doc. 44). Winthrop Resources Corporation ("Winthrop") filed a Response in Opposition. (Doc. 49). Commscope filed a motion for leave to file a reply and attached the proposed reply. (Doc. 56). Given that the Court considered the reply, the Court grants the motion for leave to file reply. (Doc. 56).

On July 1, 2014, Magistrate Judge Cayer granted Winthrop's Motion to Compel Testimony from Commscope's Former VP and CIO Kap Kim. (Doc. 42). Judge Cayer's Order compelled Kim to answer twenty-one deposition questions that defense counsel for Winthrop instructed him not to answer. Judge Cayer found that "[t]he questions involve communications occurring years after Kim's employment terminated and he moved to South Korea. The questions relate to deposition preparation and matters that may have influenced his testimony." (Doc. 42, at 1). The Order relied on *Peralta v. Cendant Corp.*, 190 F.R.D. 38 (D. Conn. 1999) and *Wade Williams Distribution, Inc. v. American Broadcast Companies*, 2004 WL 1487702

1

(S.D.N.Y. June 30, 2004 along with "other reasons stated in [Winthrop's] briefs." (Doc. 42, at 1).

I.  **STANDARD OF REVIEW**

At the outset, the parties dispute what standard this Court should apply. Winthrop urges this Court to adopt a *de novo* review. (Doc. 44, at 2 & n. 1).[1] Commscope asks that the Court continue to apply the clearly erroneous or contrary to law standard. (Doc. 49, at 2).

Federal Rule of Civil Procedure 72(a) provides that, with respect to nondispositive matters such as the instant motion, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *High Voltage Beverages, L.L.C. v. Coca-Cola Co.*, No. 3:08-CV-367, 2010 WL 234258, at *1 (W.D.N.C. June 8, 2010) (quoting *Walton v. Johnson*, 440 F.3d 160, 173-74 (4th Cir. 2006)). "If a magistrate judge's order is contrary to law then the judge must have failed to apply or misapplied statutes, case law, or procedural rules." *Miceli v. KBRG of Statesville, LLC*, 5:05CV265-V, 2008 WL 2945451 (W.D.N.C. July 24, 2008). The text of Rule 72(a) does not allow the Court to alter the level of deference it gives to magistrates. Accordingly, the Court declines to adopt a new standard of review.

---

[1] Commscope argues that Winthrop raised new issues in its reply. Commscope believes that this justifies a *de novo* review. Local Rule 7.1(E) states that "a reply brief should be limited to a discussion of matters newly raised in the response." This analysis is determined on how the issues are framed. *Flores v. Lowe's Home Centers, Inc.*, No. 5:08-CV45, 2009 WL 762198 at *8 n. 26 (W.D.N.C. Mar. 19, 2009) (noting that it "invites a relatively subjective analysis."). The Court finds that the entirety of the submissions to the Magistrate concerned whether a privilege existed to protect Kim's communications. Further, the Court finds that the cases cited by Winthrop are responsive to the *In re Allen* former employee theory advanced by Commscope.

## II. APPLICATION

### A. Choice of Law

The parties have cited many federal and state decisions in their appeal of the Magistrate's Order. The Court holds that the North Carolina law regarding privilege governs the issue. Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The Fourth Circuit states that "the availability of an evidentiary privilege is governed by the law of the forum state." *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 282 n. 5 (4th Cir. 2000).[2] Therefore, the Court will apply North Carolina privilege law to this matter. *Amatulli & Sons, LLC v. Great Northern Ins. Co.*, 3:06-CV-286, 2008 WL 113914 at * 5 (W.D.N.C. 2008). Of course, with respect to the work-product doctrine, federal law will apply.

### B. Attorney-Client Privilege

#### 1. Rules Applied

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Brown v. American Partners Fed. Credit*

---

[2] Courts look to the conflict of law provisions of the forum state to determine which privilege to apply. *Hatfill v. New York Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 5:97-CV-369BR1, 1998 WL 1742589 at *1-2 (E.D.N.C. Sept. 28, 1998) (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). North Carolina utilizes the traditional conflict of law rules. "[M]atters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722 (N.C. Ct. App. 2010). In North Carolina, "[t]he law of the forum governs the admissibility of evidence." *Frugard v. Pritchard*, 450 S.E.2d 744, 744 (N.C. 1994); *Tenn. Carolina Transp., Inc. v. Strick Corp.*, 196 S.E.2d 711, 720 (N.C. 1973) ("[Q]uestions of the admission and exclusion of evidence are generally considered procedural and governed by Lex fori."). Therefore, the North Carolina attorney-client privilege applies. *Hatfill*, 459 F. Supp. 2d at 466 (applying Virginia choice of law, which has the lex fori and lex loci distinction, to determine that matters of privilege are deemed procedural). This means Fourth Circuit law interpreting the federal law of privilege is not binding.

*Union*, 645 S.E.2d 117, 121 (N.C. Ct. App. 2007) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). North Carolina uses a five factor test to determine if the privilege applies.[3]

Commscope claims that the Magistrate's order is "contrary to well-established law in the Fourth Circuit" by citing to the case of *In re Allen*, 106 F.3d 582, 605-06 (4th Cir. 1997). (Doc. 44, at 1). *In re Allen* does not determine the North Carolina law of privilege, *Wuchenich v. Shenandoah Mem'l Hosp.*, No. CIV. A. 598CV00041, 2000 WL 1769577, at *2 (W.D. Va. Nov. 2, 2000), and no North Carolina case has adopted it.[4]

The Court has not found a North Carolina case analyzing whether the attorney-client privilege applies to former employees. The *Wuchenich* case is instructive on this point. In that case, there appeared to be no Virginia case law addressing the matter so the court turned to federal law. *Id.*, 2000 WL 1769577 at *2. This Court, therefore, turns to the federal law of privilege for guidance. In the case of *In re Allen*, the Fourth Circuit agreed with Chief Justice Berger's concurrence in *Upjohn Co. v. United States*, 449 U.S. 383 (1981) in finding that the *Upjohn* analysis applies to former employees. 106 F.3d at 605-06. North Carolina courts have

---

[3] The *Murvin* test is as follows:
> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Raymond v. N. Carolina Police Benevolent Ass'n., Inc.*, 365 N.C. 94, 100, 721 S.E.2d 923, 927-28 (2011) (quoting *State v. Murvin*, 284 S.E.2d 289, 293 (1981)).

[4] The Court of Appeals analyzed *In re Allen* when ruling on a work-product issue. *Boyce & Isley, PLLC v. Cooper*, 673 S.E.2d 694, 705 (N.C. Ct. App. 2009). The Business Court used *In re Allen* on remand from a case from the Eastern District of North Carolina. However, the parties had agreed that the federal rules would govern the dispute as the motion to compel was filed in the Eastern District but not ruled upon prior to remand after dismissing all federal claims. *Morris v. Scenera Research, LLC*, No. 09 CVS 19678, 2011 WL 3808544, at *6 (N.C. Super. Aug. 26, 2011) *supplemented,* (N.C. Super. Oct. 10, 2011). The Supplemental Order, available on the Business Court's website, stated that the Plaintiff conceded that the attorney-client relationship could not shelter communications extending beyond the period of her responsibilities and cited *Peralta v. Cendant Corp.*, 190 F.R.D. 38 (D. Conn. 1999) as authority.

4

cited favorably to the *Upjohn* decision. *See, e.g.*, *Evans v. United Servs. Auto. Ass'n*, 541 S.E.2d 782 (N.C. Ct. App. 2001).[5]

The Supreme Court in *Upjohn* "decline[d] to lay down a broad rule or series of rules" to govern this issue apart from holding that the privilege was present in the communications sought in the case before it. 449 U.S. at 386. In *Upjohn*, the communications were made by employees to corporate counsel at the behest of their superiors, provided a basis for legal advice for the corporate counsel, and "concerned matters within the scope of the employee's corporate duties." 449 U.S. at 394. The scope of employment issue with regard to former employees and the attorney-client privilege was specifically referenced by *In re Allen*. 106 F.3d at 606. The Court believes that North Carolina would adopt a construction limiting the attorney-client privilege to matters within their personal knowledge and scope of employment because "[t]he privilege must be strictly construed." *Scott v. Scott*, 417 S.E.2d 818, 822-23 (N.C. Ct. App. 1992).

The case of *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 40-42 (D. Conn. 1999) elucidates the distinction between current and former employees with regards to the attorney-client privilege. The *Peralta* court allowed the privilege to apply where the discussions between the corporate attorney and the former employee concerned matters that involved the scope of her employment, but refused to apply it where conversations went beyond the former employee's independent knowledge. *Id.* For example, informing the former employee of testimony of other witnesses would not be privileged. *Id.* at 41. The concern is that an attorney may seek to "influence a witness to conform or adjust her testimony . . . consciously or unconsciously." *Id.* The *Peralta* distinction has been accepted by other courts. *See, e.g., Wade Williams Distribution, Inc. v. American Broadcasting Cos., Inc.*, No. 5002(LMM), 2004 WL 1487702

---

[5] The Court notes that "[t]he North Carolina appellate courts have not yet decided what test should apply as to the corporate attorney-client privilege." *Brown v. Am. Partners Fed. Credit Union*, 645 S.E.2d 117, 123 (2007).

5

(S.D.N.Y. June 30, 2004); *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303 (E.D. Mich. 2000).

Accordingly, the Court holds that the *Peralta* case governs the current discovery dispute.

2.      Application

Judge Cayer found as a matter of fact that the twenty one questions in dispute involve "communications occurring years after Kim's employment terminated . . . [and] [r]elate to deposition preparation and matters that may have influenced his testimony." (Doc. 42, at 1).

Given the copious objections, the Court will address several groups of questions specifically.

First, there are questions that directly relate to deposition preparation. (Kim Dep., 77:6-7; 77:20; 77:24-25; 85:10-12; 85:21-22; 86:2-5; 86:19; 87:3-5; 87:9-10). In others, counsel for Winthrop ask about the substance of conversations that occurred during a deposition break. (Kim Dep. 129:4-5; 129:9-10; 129:14-16). These are squarely covered by the holding in *Peralta*. Therefore, the Magistrate's finding is not clearly erroneous. The privilege inquiry, and the deposition that follows this Order, must center on the following questions:

> [D]id the communication relate to the former employee's conduct
> and knowledge, or communication with defendant's counsel,
> during his or her employment? If so, such communication is
> protected from disclosure by defendant's attorney-client privilege
> under *Upjohn.* As to any communication between defendant's
> counsel and a former employee . . . no attorney-client privilege
> applies.

*Peralta*, 190 F.R.D. at 41-42.

One question seeks the substance of conversation with counsel that occurred during employment. (Kim Dep. 262:25-263:-4). This is clearly subject to the privilege under *Peralta*

and *In re Allen*. *See also King v. Allred*, 333 S.E.2d 758, 760 (N.C. Ct. App. 1985). Therefore, the Court reverses Magistrate Judge Cayer's Order compelling the answer of that question.

Another question asks whether Kim has had any discussion with any lawyers about the language of the lease agreement and "who's right, Winthrop or CommScope." (Kim Dep. 278:11-20). Kim does not have to reveal the substance of conversations while he was employed with Commscope. However, gaining insight into other opinions regarding the lease agreement could influence Kim's opinion regarding the agreement. Therefore, the Magistrate was not clearly erroneous.

One asked Kim whether he "expect[ed] Commscope lawyer's [*sic*] to go back and reread the actual language in the lease agreement." (Kim Dep. 281:10-12). The Court finds that the Magistrate was not clearly erroneous in finding that this was not subject to the attorney-client privilege.

The final two questions ask whether attorney Jeff Mayer had told, or if Kim had asked, Mayer's "personal view on whether Winthrop or Commscope is correct in their interpretation of the lease language in the case." (Kim Dep. 281:16-19; 281:23-25). Mayer's personal view on the litigation is outside the scope of Kim's personal knowledge or his scope of employment with Commscope. Gaining insight into Mayer's view would have a tendency to influence Kim's testimony. Therefore, the Court holds that this matter is not protected by the privilege.

A series of questions ask whether Kim had asked any lawyer to determine whether CommScope's or Winthrop's interpretation of the lease was correct. (Kim Dep. 280:13-17; 280-21-24; 281:3-6). Of course, if this occurred during Kim's employment with Commscope it would be subject to the privilege. However, if it did not it would not be subject to the privilege

7

and would tend to influence Kim's testimony. Therefore, the Court holds that the Magistrate's finding was not clearly erroneous.

### C. Waiver and the Work-Product Doctrine

In Commscope's Objections to the Magistrate Judge's Order, Commscope argues that the Magistrate Judge ordered Kim to answer questions that were subject to the work-product doctrine.[6] (Doc. 44, at 11-12). Winthrop argues that Commscope waived the work-product objection by failing to present it to the Magistrate Judge. (Doc. 49).

Magistrate Judges fulfill a vital role in the federal judiciary. It would defeat the purpose of the Magistrate's Act to allow a party to object to a Magistrate's Order on a ground the party never raised before the Magistrate. *Aikens v. Shalala*, 956 F. Supp. 14, 22-24 (D.D.C. 1997); *Price v. Dixon*, 961 F. Supp. 894, 899 (E.D.N.C. 1997) (dismissing objection to M&R where claim was not raised earlier); *Ervin v. Hammond*, No. 3:05-CV-059, 2008 WL 901185 at *9 n. 5 (W.D.N.C. Mar. 31, 2008) (failing to raise issue to Magistrate Judge would allow for rejection of objection outright); *see Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("[I]ssues raised for the first time on appeal generally will not be considered."). Moreover, the Court cannot see how a Magistrate's Order can be "clearly erroneous" or "contrary to law" on an issue never presented to it. Fed. R. Civ. P. 72(a); *cf Tafas v. Dudas*, 530 F. Supp. 2d 786, 798 n. 3 (E.D. Va. 2008) ("A District Court must assess whether a Magistrate Judge's decision was 'clearly erroneous or contrary to law' only based on the facts actually before the Magistrate Judge.").

Commscope's Reply Brief argues that the work-product argument "could not be waived as Winthrop introduced *Peralta* for the first time in its Reply in Support of Its Motion to Compel." (Doc. 56-1, at 4). However, the introduction of *Peralta* did not necessitate

---

[6] While the attorney-client privilege in this case is a creature of state law, the work-product doctrine is federally created. The work-product doctrine was developed in *Hickman v. Taylor*, 329 U.S. 495 (1947) and codified in Federal Rule of Civil Procedure 26(b)(3).

8

Commscope's work-product argument. If Commscope believed the questions at issue were subject to the work-product doctrine, Commscope should have raised the issue in its Response. *Republican Party of North Carolina v. Martin,* 136 F.R.D. 421, 427 (E.D.N.C. 1991) (items not protected by the attorney-client privilege "can, of course, be protected by the work-product doctrine."). Therefore, the Court declines to allow Commscope to pursue a theory not advanced before the Magistrate.

> D. Commscope's Objection to the Magistrate's Order Requiring the Deposition to be in the Western District of North Carolina

Magistrate Judge Cayer's Order stated that "[t]he deposition shall take place within the Western District of North Carolina or such other location in the United States as the parties may agree." (Doc. 42, at ¶ 2).

Commscope claims that it is unnecessarily burdensome for Kim to travel to the Western District of North Carolina. (Doc. 44, at 12). Winthrop argues that Magistrate Judge Cayer was "well within his discretion to order that Commscope produce Kim the same way (in person in the United States) that Kim was produced the first time." (Doc. 49, at 18).

Winthrop originally moved for the deposition to take place according to the terms provided by Magistrate Judge Cayer. (Doc. 34, at 12). Commscope never objected expressly to the terms of the Order sought. (Doc. 38, at 11-14). However, Commscope did take issue with the timing of the motion, the relevancy of requested questions, and the purpose of the motion itself. (*Id.*).

9

The Court finds that Magistrate Judge Cayer did not abuse his discretion[7] and was not contrary to law in his Order. Therefore, the Court declines to limit Magistrate Judge Cayer's Order.

**IT IS, THEREFORE, ORDERED THAT**

(1) Commscope's Objection to Magistrate Judge Cayer's Order is Denied (Doc. 44), except as to the question in Kim Dep. 262:25-263:1-4;

(2) Commscope's Motion for Leave to File a Reply (Doc. 56) is Granted in that the Court considered the attached reply;

(3) The Unopposed Motion to Stay (Doc. 46) is Granted; and

(4) The parties are directed to take the deposition in the Western District of North Carolina or such other location in the United States as the parties may agree. Within thirty (30) days from entry of this Order, Defendant shall make Kap Kim available for deposition where he shall answer all questions he was instructed by counsel not to answer in accordance with this Order as well as reasonable follow up questions.

Signed: November 7, 2014

Richard L. Voorhees
United States District Judge

---

[7] If a court finds "good cause" it has the discretion to issue an order "specifying terms, including time and place, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(B).